UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BCC PARTNERS, LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )  Case No. 4:22 CV 849 RWS |
| | ) |
| TRAVELERS PROP. CAS. CO. OF AMERICA, | ) |
| | ) |
|     Defendant. | ) |

## **MEMORANDUM AND ORDER**

This case is part of a lengthy dispute involving the Vue Project, an apartment complex at 10545 Olive Street Road in St. Louis County owned by plaintiff BCC Partners, LLC.  Plaintiff contracted with builder Ben F. Blanton Construction, Inc. to construct the apartment complex.  As part of that contract, Blanton was required to obtain insurance, including the policy with defendant Travelers Property Casualty Company of America at issue here.

During construction, a retaining wall on the site failed.  Litigation ensued.  There was an arbitration proceeding over the Vue Project involving plaintiff, Blanton, and multiple subcontractors, which resulted in an award in plaintiff's favor and against Blanton in the amount of $7,234,541.33.  That award precipitated Blanton's filing for bankruptcy in this Bankruptcy Court.  *In re Ben R. Blanton Construction Inc.*, Case Number 20-43555, Doc. 1 (Bankr. E.D. Mo.).  Blanton

then sued defendant for damages under the same insurance policy at issue here for costs associated with removing and replacing the failed retaining wall. After reference to the Bankruptcy Court was withdrawn, that case was tried to a jury last summer in this Court and resulted in a verdict in favor of Blanton and against defendant in the amount of $331,868. ECF 90 in Case Number 4:20CV1141 SRC.

In this case, plaintiff seeks yet more money for damages it allegedly incurred in connection with the failure of the retaining wall at the Vue Project. This time, plaintiff claims that it is entitled to its alleged loss of rental income and soft costs under Blanton's insurance policy with defendant as an additional insured.

Before me now are cross-motions for summary judgment filed by the parties. Because plaintiff is not entitled to soft costs and loss of rental income as an additional insured under the plain language of the insurance policy, defendant's motion for summary judgment is granted and plaintiff's motion is denied.

<u>Standards Governing Summary Judgment</u>

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011). The Court must view the evidence in the light most favorable to the nonmoving party and accord him the

then sued defendant for damages under the same insurance policy at issue here for costs associated with removing and replacing the failed retaining wall. After reference to the Bankruptcy Court was withdrawn, that case was tried to a jury last summer in this Court and resulted in a verdict in favor of Blanton and against defendant in the amount of $331,868. ECF 90 in Case Number 4:20CV1141 SRC.

In this case, plaintiff seeks yet more money for damages it allegedly incurred in connection with the failure of the retaining wall at the Vue Project. This time, plaintiff claims that it is entitled to its alleged loss of rental income and soft costs under Blanton's insurance policy with defendant as an additional insured.

Before me now are cross-motions for summary judgment filed by the parties. Because plaintiff is not entitled to soft costs and loss of rental income as an additional insured under the plain language of the insurance policy, defendant's motion for summary judgment is granted and plaintiff's motion is denied.

<u>Standards Governing Summary Judgment</u>

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011). The Court must view the evidence in the light most favorable to the nonmoving party and accord him the

benefit of all reasonable inferences. *Scott v. Harris,* 550 U.S. 372, 379 (2007). The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the burden of informing the Court of the basis of its motion and demonstrating the absence of an issue for trial. *Celotex Corp.*, 477 U.S. at 323. Once a motion is properly made and supported, the nonmoving party must either proffer evidence in the record that demonstrates a genuine issue of material fact or show that the moving party's proffer does not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248; *Conseco Life Ins. Co. v. Williams,* 620 F.3d 902, 910 (8th Cir. 2010); *Howard v. Columbia Pub. Sch. Dist.,* 363 F.3d 797, 800-01 (8th Cir. 2004). The substantive law determines which facts are critical and which are irrelevant. *Anderson*, 477 U.S. at 248. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.*

In determining a motion for summary judgment, The Court considers only those facts that can be supported by admissible evidence. Fed. R. Civ. P. 56(c); *Woods v. Wills*, 400 F. Supp. 2d 1145, 1175-76 (E.D. Mo. 2005). Testimony that would not be admissible is ignored. *Shaver v. Independent Stave Co.*, 350 F.3d

716, 723 (8th Cir. 2003). Under these standards the Court reviews the pending motions.

Additional Background Facts

In connection with the Vue Project, defendant issued to Blanton a Builder's Risk Policy of Insurance (Policy Number 660-4860N195, with effective dates of June 15, 2015 to September 30, 2016, i.e., the "Travelers Policy"). The Travelers Policy is attached as Exhibit 1 to plaintiff's amended complaint. ECF 22-1. It states that "the words 'you'" and 'your' refer to the Named Insured shown in the Declarations." ECF 22-1 at 16. The Travelers Policy lists "Ben F. Blanton Construction, Inc." as the sole Named Insured in the Declarations. ECF 22-1 at 1.

Section E.1. of the Travelers Policy defines the term "Additional Named Insured" as follows:

1. **Additional Named Insured**

The following persons or organizations are included as Additional Named Insureds when you have agreed in a written contract or written agreement, executed prior to loss, to name such persons or organizations as an Additional Named Insured, but only to the extent of their financial interest in the Covered Property:

    a. Owners of Covered Property;
    b. Mortgagees or loss payees;
    c. Contractors, sub contractors and sub-sub contractors; and
    d. Lessors or lessees.

ECF 22-1 at 27. The parties do not dispute that plaintiff is an Additional Named Insured.

The Travelers Policy provides:

> **A.   COVERAGE**
>
> We will pay for direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss.
>
> **1.   Covered Property**
>
> Covered Property, as used in this Coverage Form, means the following types of property you own or for which you are legally liable, the value of which is included in the estimated "total project value" shown in the Declarations:
>
> **a.   Permanent Works**
>
> Materials, equipment, machinery, supplies and property of a similar nature that will become a permanent part of the project described in the Declarations during completion of such project or that will be used or expended in the completion of such project.
>
> Completion of the project includes site preparation (including demolition of existing buildings or structures), fabrication, assembly, installation, erection, alteration, renovation and similar construction activities.
>
> **b.   Temporary Works**
>
> Cofferdams, construction forms, cribbing, falsework, hoarding, scaffolds, fencing, signs, office trailers (and their "contents") and similar temporary buildings or structures incidental to completion of the project described in the Declarations.

ECF 22-1 at 16. The Travelers Policy includes a Builders' Risk Special Time Element Coverage Form, ECF 22-1 at 35, which contains the following relevant language:

> **2.   "Rental Value"**

5

> We will pay the actual loss of "rental value" you sustain due to the partial or complete:
>
> a. Cessation of your business activities; or
>
> b. Delay in start up of your business activities;
>
> during the "post-loss period of repair or construction." Such cessation or delay must be caused by direct physical loss of or damage to Covered Property by a Covered Cause of Loss.

ECF 22-1 at 35.

Section A.4(d) of the Travelers Policy called "Coverage Extensions" addresses soft costs and provides that "Each of the following Coverage Extensions applies unless Not Covered is indicated in the Declarations":

> **d.    Soft Costs**
>
> We will pay your "soft costs" during the "period of delay in completion." Such "soft costs" must result from direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss which delays the completion of the applicable project beyond the "planned completion date."

ECF 22-1 at 18. "Soft Costs" are denied in the Travelers Policy as follows:

> "Soft Costs" means your actual and necessary business costs in excess of your budgeted amount for the project consisting only of:
>
> a. Advertising and promotional expenses.
>
> b. Architect, engineer, designer and consultant fees.
>
> c. Costs resulting from the renegotiation of your sales contract, leases, or construction loans.
>
> d. General overhead and administrative expenses, other than legal, accounting and professional fees.

6

>    e. Insurance premiums.
>
>    f. Interest on money borrowed to finance construction.
>
>    g. Legal and accounting fees and other costs to renegotiate and prepare revised contracts and other documents.  These expenses cannot be used for preparation of claims or to establish liability for loss.
>
>    h. Permit and Inspection Fees.
>
>    i. Realty taxes and realty assessments.

ECF 22-1 at 34.

The total available coverage limit under the Travelers Policy's Special Time Element coverage form and the soft costs coverage extension is $1,600,000.00.

After the failure of the retaining wall, plaintiff submitted a claim to defendant under the Travelers Policy.  Plaintiff alleges that it is entitled to lost rental income and soft costs under the Travelers Policy up to the policy limits.  Defendant made an initial payment to plaintiff in the amount of $200,000, but after investigation it denied coverage and reserved the right to recover payment.  ECF 58-4.  Plaintiff then sued defendant for breach of contract (Count I of the amended complaint) and vexatious refusal to pay under Missouri law (Count II of the amended complaint).

## Discussion

The parties agree that Missouri law governs interpretation of the insurance contract.  Under Missouri law, general rules of contract construction apply when interpreting an insurance policy. *Todd v. Missouri United Sch. Ins. Council*, 223

7

S.W.3d 156, 160 (Mo. 2007). "The key is whether the contract language is ambiguous or unambiguous." *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. 1993). "Absent an ambiguity, an insurance policy must be enforced according to its terms." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. 2007).

If ambiguity exists, the court interprets the policy in favor of the insured. *Todd*, 223 S.W.3d at 160. "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. 2010) (quoting *Seeck*, 212 S.W.3d at 132). "Courts should not interpret policy provisions in isolation but rather evaluate policies as a whole." *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. 2009). Courts must "endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant." *Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553, 556 (Mo. Ct. App. 2008). Courts must apply "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance . . . ." *Seeck*, 212 S.W.3d at 132 (internal quotations and citations omitted). "'A contract or provision . . . is not ambiguous merely because the parties disagree over its meaning.'" *Gohagan v. Cincinnati*

8

*Ins. Co.*, 809 F.3d 1012, 1016 (8th Cir. 2016) (quoting *Atlas Reserve Temps., Inc. v. Vanliner Ins. Co.*, 51 S.W.3d 83, 87 (Mo. Ct. App. 2001)).

Plaintiff claims it is entitled to coverage for lost rental income and soft costs under the Travelers Policy. It contends that the coverage extension for soft costs and rental income must be liberally construed as granting coverage to all insureds, including additional named insureds.

The plain language of the Traveler's Policy does not support plaintiff's interpretation as a matter of law. The Coverage Extension for Soft Costs states that "We will pay your 'Soft Costs' during the 'period of delay in completion.'" With respect to rental income, the Builders' Risk Special Time Element Coverage Form provision of the Travelers Policy similarly states, "We will pay the actual loss of 'rental value' you sustain." The Travelers Policy unambiguously defines "you" and "yours" as follows: "Throughout this policy, the words 'you' and 'your' refer to the Named Insured shown in the Declarations." Accordingly, the Coverage Extension and Risk Special Time Element Coverage Form, specifically employing the defined term "you," unambiguously apply solely to the Named Insured listed in the Declarations. Blanton is the only Named Insured.

The parties could have written the Travelers Policy so that the Coverage Extension and Risk Special Time Element Coverage Form applied to both the Named Insured and Additional Named Insureds, but they did not. The Court must

9

enforce the contract before it, not the contract plaintiff wishes had been signed. Thus, the Coverage Extension and Risk Special Time Element Coverage Form do not entitle plaintiff to coverage for its soft costs or lost rental income.

The Travelers Policy provision entitled "Additional Named Insured" does not provide plaintiff with a basis to obtain soft costs or lost rental income. That provision limits an Additional Named Insured's coverage "only to the extent of their financial interest in the Covered Property." As explained above, the Travelers Policy defines Covered Property to mean Permanent Works or Temporary Works (which are further defined). Soft costs and rental value have distinct and separate definitions in the Travelers Policy. The fact that the Travelers Policy separately and explicitly provides a Coverage Extension for Soft Costs and a Builders' Risk Special Time Element Coverage Form for rental value reinforces the notion that soft costs and rental income are not encompassed as part of the "financial interest in the Covered Property." Instead, the types of coverage are distinct. To find otherwise would render the distinction between coverage for Covered Property and coverage for Soft Costs and Rental Value meaningless-–a result to be avoided under Missouri law. *See Axis Surplus Ins. Co. v. TriStar Companies, LLC*, -- F.3d --, 2024 WL 903193, at *2 (8th Cir. Mar. 4, 2024); *Dibben*, 261 S.W.3d at 556. The rights to Soft Costs and Rental Value are broader than the rights Additional Named Insureds have under the Travelers Policy.

10

The Court rejects any argument that Travelers Policy is ambiguous. For the reasons explained above, the phrases "Covered Property," "Soft Costs," and "Rental Value" are defined in the Travelers Policy and, as such, work together to exclude plaintiff's claim from the scope of the policy's coverage for Additional Named Insureds. These provisions unambiguously provide that Additional Named Insureds are entitled to different coverage than Named Insureds, as their coverage is limited "only to the extent of their financial interest in the Covered Property," not Soft Costs and Rental Value as separately defined.

To the extent plaintiff attempts to argues that the Travelers Policy is illusory because it does not afford an Additional Named Insured the same coverage as the Named Insured, that argument is rejected. The fact that an insurance contract unambiguously limits the recovery of certain types of damages to named insureds only does not render an insurance policy illusory. *See, Seaton v. Mut. Ins. Co.,* 574 s.w.3D 245, 247-48 (Mo. 2019). Nor does defendant's initial payment to plaintiff create coverage in this case, as under Missouri law waiver or estoppel "cannot create a contract of insurance or so apply as to bring within the coverage of policy property, or a loss or risk, which by the terms of the policy is expressly excepted or otherwise excluded." *Selvy v. Sun Life Assurance Co. of Canada*, 310 F. Supp. 3d 1026, 1029 (W.D. Mo. 2018) (cleaned up). "While estoppel may operate to bar a defense to a claim of coverage, it does not create coverage where none existed

11

under the policy in the first place." *Martin v. U.S. Fid. & Guar. Co.*, 996 S.W.2d 506, 511 (Mo. 1999). Such is the case here, where there is no coverage for an Additional Named Insured's soft costs and rental income as a matter of law.

For these reasons, defendant is entitled to summary judgment on plaintiff's breach of contract claim. Because plaintiff is not entitled to soft costs and lost rental income under the unambiguous provisions of the Travelers Policy, its claim that defendant vexatiously refused to pay it necessarily fails. *See BSI Constructors, Inc. v. Hartford Fire Ins. Co.*, 705 F.3d 330, 335 (8th Cir. 2013) (vexatious refusal claim must fail where insurer has no obligation to pay).

Defendant is accordingly entitled to judgment as a matter of law on all counts of the amended complaint. Plaintiff's cross-motion for summary judgment is denied, as it is entitled to no relief on its claims.

Given that defendant is entitled to judgment as a matter of law, the pending motions in limine will be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [56] is granted, plaintiff's amended complaint is dismissed with prejudice, and plaintiff shall take nothing on its claims.

**IT IS FURTHER ORDERED** that plaintiff's motion for partial summary judgment [63] is denied.

**IT IS FURTHER ORDERED** that all remaining pending motions [80, 82] are denied as moot.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 11th day of March, 2024.